UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Jeffrey Robert Fiore,　　　　　　　　　　　　　　Case No. 08-48648
　　　　　　　　　　　　　　　　　　　　　　　　Chapter 7
　　　Debtor.　　　　　　　　　　　　　　　　　　Hon. Walter Shapero

_____/

Emergency Restoration Company,

　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Adv. Pro. No. 08-04685

Jeffrey Robert Fiore,

　　　Defendant.

_____/

## OPINION DENYING NON-DISCHARGEABILITY OF DEBTS

On June 18, 2008, Plaintiff, Emergency Restoration Company, filed this adversary proceeding against Debtor, Jeffrey Fiore, seeking non-dischargeability of the debts owed it by Debtor, pursuant to 11 U.S.C. § 523(a)(4) and (a)(6).

## BACKGROUND AND FACTS

Jeffrey Fiore ("Debtor/Defendant") was a principle and president of J R Fiore Construction, Inc. ("Fiore Construction"), a now dissolved company, which was in the building construction industry. Emergency Restoration Company ("Plaintiff") is a fire restoration contractor. Fiore Construction entered into three contracts with Plaintiff, specifically: (1) on November 14, 2006, under which Plaintiff was hired to perform fire restoration services at 6414 Markel Road, Cottrellville Township, Michigan; (2) on December 11, 2006, under which Plaintiff was hired to perform water mitigation services at 240 Oriley Court, Pontiac, Michigan; and (3) on February 2, 2007, under which Plaintiff was hired to perform water mitigation services at 12685 Metcalf Road, Emmett, Michigan. Plaintiff performed the services at the three properties and sent the following invoices to Fiore Construction: (a) one dated November 26,

1

2006, for the work done at the Markel Road property totaling $22,358.10; (b) one dated December 26, 2007, for the work done at the Oriley Court property totaling $3,676.75; and (c) one dated February 15, 2007, for the work done at the Metcalf Road property totaling $9,891.83. Fiore Construction failed to pay Plaintiff for the materials supplied and work done on these properties.

Debtor filed his Chapter 7 petition on April 9, 2008.

On May 22, 2008, Plaintiff filed a complaint in the Macomb County Circuit Court against Fiore Construction and Debtor, alleging three counts of breach of contract, unjust enrichment, violation of the Michigan Builder's Trust Fund Act, and violation of the Uniform Fraudulent Transfer Act. Due to Debtor's bankruptcy filing, Plaintiff continued its case against Fiore Construction only. Fiore Construction failed to file and answer and, on April 13, 2009, the Macomb County Circuit Court entered a default judgment against Fiore Construction in the amount of $52,247.26 ($35,926.68 in principal, $13,330.55 in interest, and $2,990.03 in attorney fees).

Plaintiff filed this adversary proceeding on June 18, 2008, and then Plaintiff filed a Motion for Summary Judgment, which was denied. The trial was held December 7, 2010, following which the parties submitted post-hearing briefs.

## DISCUSSION
## 11 U.S.C. § 523(a)(4)

11 U.S.C. § 523(a)(4) excepts from the discharge a debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny. In the present case, Plaintiff alleges that Debtor had a fiduciary duty to Plaintiff under the Michigan Building Contract Fund Act, MCL 570.151 *et. seq*. (commonly referred to as the "Michigan Builders Trust Fund Act" or "MBTFA") and contends that Debtor violated his fiduciary duty by failing to pay for work done by Plaintiff at the three properties, making those debts non-dischargeable under § 523(a)(4).

MBTFA imposes a trust on the funds received by building contractors for the payment of contractors, subcontractors, and materialmen. A contractor doing business in Michigan is prohibited from retaining or using construction payments from a particular project until all laborers, subcontractors, and materialmen have been paid. *People v. Brown*, 610 N.W. 2d 234, 237 (Mich. Ct. App. 2000). The MBTFA provides:

2

> Sec. 1. In the building construction industry, the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.
>
> \* \* \*
>
> Sec. 3. The appropriation by a contractor, or any subcontractor, of any moneys paid to him for building operations before the payment of him of all moneys due or so to become due laborers, subcontractors, materialmen or others entitled to payment, shall be evidence of intent to defraud.

MICH. COMP. LAWS § 570.151-153.

> The effect of this statute is to impose a trust, with the contractor operating as the trustee, upon the funds paid by any person in connection with a building contract. *Huizinga v. United States*, 68 F.3d 139, 144 (6th Cir. 1995). And from a purely legal standpoint, it is proper to equate a violation of the Michigan Builder's Trust Fund Act to that of an act of defalcation while acting in a fiduciary capacity as applied to § 523(a)(4).

*Behler-Young Co. v. Cousino (In re Cousino)*, 364 B.R. 289, 293 (Bankr. N.D. Ohio 2006) (footnote omitted).

The *prima facie* elements of a civil cause of action brought under the MBTFA include: (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on the construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project. *Astro Building Supplies, Inc. v. Slavick (In re Slavik)*, 426 B.R. 711, 716 (Bankr. E.D. Mich. 2010) (citing *DiPonio Constr. Co., Inc. v. Rosati Masonry Co., Inc.*, 631 N.W. 2d 59, 62 (Mich. App. 2001)).

> Stated differently, to prevail on a Michigan Builders Trust Fund claim, Plaintiff must establish that Defendant used supplies [or services] provided by Plaintiff in **specific** construction projects, that Defendant was **paid by his customers for the specific projects in which those supplies were used [or services were rendered]**, and that Defendant **failed to pass those payments** on to Plaintiffs. *See generally DiPonio Constr. Co., Inc.*, 631 N.W.2d at 62-64. Once Plaintiff has established these elements, Plaintiff has established a *prima*

*facie* case that a trust exists with regard to the disputed funds, and the burden shifts to the Defendant to prove that he did not defalcate funds received in trust. *Cappella v. Little (In re Little)*, 163 B.R. 497 (Bankr. E.D. Mich. 1994). Because the Act imposes a trust on specific funds, the law is clear that in order to establish the existence of a trust, both the project in which the supplies were used [or the services were rendered] and the payments received by a defendant for those projects must be specifically identified. It is not the provision of supplies [or the rendering of services] which creates the trust, it is the payment of funds on a project which used the supplies [or services] which creates the trust. *See Shafer Redi-Mix Inc. v. Craft*, 414 B.R. 165 (W.D. Mich. 2009) (wherein the court rejected plaintiff's theory that a trust under the [MBTFA] is created by the delivering of building materials).

*In re Slavik*, 426 B.R. at 716.

The *Slavik* court further stated: "[T]o become a trust beneficiary under [MBTFA], a supplier or contractor must provide building materials or labor on an identifiable project. The payments arising from the identifiable project are the funds impressed with the trust under [MBTFA]." *Id*. at 717. "Plaintiff has the initial burden of proving the existence of a trust relationship." *Id*. at 718. "In order to satisfy this initial burden of proof, Plaintiff must establish the existence of a fiduciary duty, that is, Plaintiff must show that Defendant received funds from customers and that those funds were impressed with a trust for Plaintiff's benefit." *Id*. at 719.

It appears that Plaintiff felt it was Defendant's obligation to assert and prove that he was not paid by the owners. As the noted authority states, to establish a *prima facie* case (thus transferring the burden of proof to the Defendant, who must then provide an appropriate accounting for the monies), a plaintiff in such cases has the initial burden of proving that:

(1) the plaintiff supplied materials or services for a specified construction project or projects; and

(2) the defendant was paid by the owner or other persons for the, or each of those, specified project(s) in which the indicated materials were used or services were rendered; and

(3) the defendant failed to pass those payments to plaintiff.

Plaintiff clearly established the first element and it is indeed apparent that Plaintiff was not paid. However, what was lacking in Plaintiff's proofs was the essential evidence that in fact any of the owners or responsible persons of, or for, each of those projects actually paid the Defendant, and if so, in what amounts. Those facts simply cannot be inferred from the mere facts that (a)

4

Plaintiff was not paid what it was owed on those projects, and/or (b) Plaintiff supplied materials and provided services. Something affirmative and more than is contained in this record is initially required of a Plaintiff in such cases.

This proceeding was commenced in June 2008 and, while there were changes in attorneys on both sides and various adjournments of various proceedings, the originally issued scheduling order provided for discovery and Defendant's initial disclosures indicated that the various property owners of the projects at issue were likely to have discoverable information. Plaintiff's Motion for Summary Judgment asserted that, upon information and belief, Fiore Construction was paid for the materials and services provided at the referred to properties. Paragraph 34 of the Complaint alleged the same thing. That allegation in the Complaint was neither admitted nor denied in the Defendant's Answer. Defendant's response to the Motion for Summary Judgment on this point said that "while Plaintiff has a belief that the Defendant was paid, Plaintiff cannot support this belief with proof." Plaintiff's Motion for Summary Judgment was denied because of the existence of factual issues. The docket does not reveal the extent, if any, of any discovery, but there was plenty of time to conduct such, and there were no witnesses produced at trial who testified on this issue. Nor does it appear that such witnesses, or relevant records, were unavailable or unascertainable. No Joint Final Pre-Trial Order, which might have expressed the parties' views on this issue, was entered in this case, largely due to the Court concluding the matter should be tried without it. Defendant testified at the trial, but he was not asked if he or Fiore Construction received any payments on these three jobs and/or, if so, the details of such, and there is no other evidence on those specific questions. Though it is fairly rare that a case such as this might be decided on a burden of proof issue, who has those burdens is, or can be, decisive to the decision in any given case and is not to be readily ignored. This is one of those cases. Thus, Plaintiff has failed to meet its burden of proof and therefore, non-dischargeability under § 523(a)(4) is denied.

### 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The elements of non-dischargeability under §523(a)(6) are (1) desire to cause the consequences of the act or belief that the consequences are substantially certain to result; and (2) no just cause or

5

08-04685-wsd    Doc 38    Filed 04/13/11    Entered 04/13/11 12:23:57    Page 5 of 7

excuse. *Kennedy v. Mustaine (In re Kennedy)*, 249 F.3d 576, 580 (6th Cir. 2001) (citations omitted).

Non-dischargeability under § 523(a)(6) "takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998). "[U]nless 'the actor desires to cause the consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999) (*quoting* Restatement (Second) of Torts § 8A, at 15 (1964)). The second component of § 523(a)(6), that the injury be malicious, "means in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986).

Plaintiff alleges that Defendant's failure to pay Plaintiff was willful and malicious. In this case, Plaintiff has established that Defendant failed to pay Plaintiff for the materials provided and the work done on the three properties. One might make the argument that having received potential trust fund money and failing to pay it over might be grounds to infer that such failure to pay was willful and malicious, within the meaning of those terms in the statute. But, in this case, that need not be decided because its premise, i.e., that money on the projects in question was in fact paid to Defendant, was not the subject of sufficient proof as noted with reference to the § 523(a)(4) issue. All that Plaintiff has shown here, if anything, is merely a breach of contract.

> [G]enerally, a breach of contract without more is insufficient to constitute a willful and malicious injury." *See Kawaauhau v. Geiger*, 523 U.S. 57, 62, 118 S. Ct. 974, 140 L. Ed. 2d. 90 [(1998)] (rejecting an interpretation of willful and malicious injury under § 523(a)(6) that would include a broad range of acts intentionally engaged in, but where the consequences of the acts were unintended, for example, a "knowing breach of contract"). A debtor's simply breach of contract ordinarily will not be sufficient for the damages resulting from such breach to be deemed to be a non-dischargeable debt under § 523(a)(6). *Salem Bend Condominium Assoc. v. Bullock-Williams (In re Bullock-Williams)*, 220 B.R. 345, 347 (6th Cir. BAP 1998) (finding that creditor did not demonstrate that debtor intended to cause harm by failing to pay condominium association dues). However, there are cases that have held that a breach of contract, plus aggravating circumstances, may give rise to a non-dischargeable debt under § 523(a)(6).

*Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 266 (Bankr. E.D. Mich. 2009). Plaintiff has failed to allege any aggravating circumstances in this case which

might allow the Court to find that the alleged breach of contract constitutes a willful and malicious injury. Nor has Plaintiff has shown that Defendant intended to cause harm by breaching the contracts, thus, Plaintiff's request to determine non-dischargeability under § 523(a)(6) is denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's request to determine non-dischargeability under 11 U.S.C. §§ 523(a)(4) and (a)(6) is denied. An order is being concurrently entered.
.

```
Signed on April 13, 2011
                        /s/ Walter Shapero
                   Walter Shapero
                   United States Bankruptcy Judge
```